GERTRUDE S. BOWES *v.* THE NEW ENGLAND
TRANSPORTATION COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 5, 1939—decided January 3, 1940.

*James W. Grady,* with whom, on the brief, was *Edwin H. Hall,* for the appellant (defendant).

*Richardson Bronson,* with whom was *William J. Secor, Jr.,* for the appellee (plaintiff).

BROWN, J. The plaintiff, a passenger on a bus of the defendant, was injured by bumping her head against the luggage rack over her seat as she stood up preparatory to getting off. By its assignments of error upon this appeal from the court's judgment in favor of the plaintiff, the defendant attacks the court's finding and conclusions, as well as the overruling of its claims of law, and thereby presents the questions as to whether the court erred in concluding that the defendant was negligent, and that the plaintiff was free from contributory negligence. Although the plaintiff alleged in her complaint that the defendant was negligent in using a bus equipped with an overhead luggage rack like the one in question, and also in failing to warn the plaintiff of the danger of striking her head thereon, by its finding the court determined that the defendant's negligence causing the plaintiff's injury was confined to the latter ground, and it is expressly

conceded by the plaintiff that this is the only negligence upon which she relies. Since our conclusion upon this issue is determinative of the appeal, it is unnecessary to discuss that of the plaintiff's freedom from contributory negligence.

The following material facts are undisputed. The plaintiff, a woman forty-two years of age and sixty-one inches in height, boarded the defendant's bus as a passenger on the afternoon of July 12, 1938, carrying two suit boxes about two feet long by one and one-half feet in width and a bag containing a hat. Opposite the last cross seat on the left side of the bus, the plaintiff looked at the overhead baggage rack, intending to put her packages into it, but seeing it was filled, placed them on the part of that seat next to the window and sat down on the part next to the aisle. The backs of the seats slanted backward, making it difficult though not impossible for one getting up from his seat to stand up straight until he has stepped out into the aisle. The consequent normal action of a passenger in sliding sideways in or out of the seat with body bent would prevent his striking his head on the rack. No warning was given to the plaintiff of any danger of striking her head should she stand up. After the bus had stopped to let her off, the plaintiff stood up in front of her seat, turned and bent down to pick up her bundles, and as she straightened up, hit the top of her head against the luggage rack, resulting in her injury. She had ridden on this and similar buses and used their overhead luggage racks many times, and knew the position of the racks in this as well as in the other buses. She had not struck her head thereon before.

The luggage rack was made of sheet aluminum, ran practically the entire length of the bus, extended out from the side wall about half way over the part of the

seat on which plaintiff sat, and at that point was fifty-four inches from the floor. The bottom of the rack was seventeen inches from the roof, accommodating an ordinary suit case. Since 1933 buses with similar racks at no greater height from the floor, have been and still are being built by the largest bus manufacturers of the country. They are in use today in every state in the union, and more than ten thousand of them were in operation at the time of this accident. From an engineer's standpoint, to provide a place for luggage inside the bus within the passenger's control, and at the same time to maintain a low center of gravity for safety in operation, it is necessary to locate the baggage racks with no greater clearance from the floor. Since the inception of inside baggage racks in 1926, there have been no buses constructed with these racks which have head room beneath them for the ordinary passenger to stand upright. When this bus was manufactured in 1933, it was the latest in design for the safety and comfort of passengers. The manufacturer of it has never installed warning signs in buses made by it and makes no recommendation for such installation. Such a sign could have been installed at small expense. In other types of transportation in general use today, such as taxicabs, sleeping-berths, airplanes, and railroad trains, a passenger is confined to limited movements. The public utilities commission and the interstate commerce commission have both approved this type of bus.

The defendant contends that the court erred in finding that the amount of head clearance available was not apparent to a seated passenger and that the appearance of the luggage rack was not such as to put her on notice of danger in standing up. These facts are unsupported by the evidence. The testimony, as supplemented by the photographs in evidence of the

interior of the defendant's bus, clearly demonstrates that there was nothing to prevent a seated passenger from observing the nature and location of the luggage rack as it extended along the bus above her and thus to note how low it was, and particularly was this true of the plaintiff, who had looked at it to find room for her parcels before sitting down. It is difficult to conceive how this could have been more apparent than it was, or of any possible reason for its not putting the seated passenger upon notice of the danger involved in precipitately standing erect under it. The perfectly obvious limitation in head room incident to the existing construction constituted a warning per se of the danger of standing up as the plaintiff did, which the necessity of picking up the bundles to her left did not mitigate.

As already pointed out, whatever danger there was, was so entirely obvious and apparent that any warning would have been superfluous and uncalled for. A sign of the nature suggested by the court would have been useless, for it necessarily must have been smaller and less obvious than the condition against which it was intended to warn. Furthermore, the common practices above noted in this and other types of transportation by which the movements of the passenger are restricted, the restraint against standing erect afforded by the slanting seats, and the fact that the manufacturer of the bus neither installed nor recommended the installation of warning signs, also suggest the lack of any need of warning by the defendant. Under the circumstances there was no duty upon the defendant to warn the plaintiff. The fact that the search of counsel has produced but a single decided case of a passenger claiming damages for bumping his head against an overhead rack in the bus of a common carrier, and that that decision was in favor of the

defendant, is strongly indicative that no such duty as that for which the plaintiff contends has been recognized by the courts. For similar reasons, and further because the plaintiff had not only looked at this very rack when taking her seat but also was familiar with its position from previous use of racks similarly placed, it is apparent that the defendant's failure to warn was not a substantial factor in causing the plaintiff's injuries, and that it is not reasonably probable that the sign suggested by the court would have been heeded by the plaintiff and so have saved her from harm.

The defendant as a carrier of passengers was under the duty to exercise "the highest reasonable degree of care, vigilance, and forethought, which was consistent with the mode of conveyance and the practical operation of the road." *Hinckley* v. *Danbury*, 81 Conn. 241, 243, 70 Atl. 590; *Maher* v. *Connecticut Co.*, 113 Conn. 556, 559, 155 Atl. 854; *Briganti* v. *Connecticut Co.*, 119 Conn. 316, 320, 175 Atl. 679; *Belledeau* v. *Connecticut Co.*, 110 Conn. 625, 627, 149 Atl. 127; and see *Rosenthal* v. *New York, N. H. & H. R. Co.*, 88 Conn. 65, 69, 89 Atl. 888. It was not, however, an insurer of the plaintiff's safety. *Thorson* v. *Groton & Stonington St. Ry. Co.*, 85 Conn. 11, 14, 81 Atl. 1024. The general rule applicable to a situation such as this is that the carrier is bound to warn passengers of a danger when the circumstances are such that the carrier ought reasonably to foresee that it exists and that a passenger would not, in the exercise of reasonable care, be likely to observe and apprehend it. *Bannister* v. *Berkshire Street Ry. Co.* (Mass.) 18 N. E. (2d) 342; *Milliken* v. *Rhode Island Co.*, 40 R. I. 82, 88, 99 Atl. 1023; *Tietz* v. *International Ry. Co.*, 186 N. Y. 347, 352, 78 N. E. 1003; *Savage* v. *New York, N. & H. S. S. Co.*, 185 Fed. 778, 780; 13 C. J. S. 1264, § 682; 10 C. J. 910; and see the *Hinckley, Maher* and *Rosen-*

*thal* cases, supra. Our determination that upon the finding as corrected the defendant was under no duty to warn the plaintiff, and that the court's conclusion that it was negligent in failing to do so was erroneous, is supported by the above authorities and explicitly confirmed by the decision in the *Bannister* case, supra, which is the only one on all fours with the present case, for the fact that the plaintiff there bumped her head incident to taking her seat instead of leaving it as here, is immaterial to the application of the controlling principle involved. What the court said of that case (p. 344) is equally applicable to the one before us: "The source of danger was neither wholly nor partially concealed. . . . The evidence falls short of showing any failure of the defendant to exercise the care for the safety of the plaintiff as its passenger required of a common carrier."

There is error, and judgment is directed for the defendant.

In this opinion the other judges concurred.