MARY JOSEPHINE EGAN
*vs.*
THE CONNECTICUT COMPANY

Court of Common Pleas   New Haven County   File No. 31458

MEMORANDUM FILED JUNE 3, 1943.

*Vincent P. Dooley* and *Isadore Chaplowe*, of New Haven, for the Plaintiff.

*James W. Grady,* of New Haven, for the Defendant.

FITZGERALD, J. The plaintiff, a woman in late middle life, brings this action to recover damages of the defendant, a common carrier of passengers operating a trolley system in New Haven. On the evening of December 6, 1940, at about 7 o'clock, the plaintiff was standing at the defendant's "stop pole" located on the northerly side of Lombard Street opposite the northerly terminus of Poplar Street across the highway, waiting to board a westbound trolley of the defendant to go downtown. In due time a westbound trolley made its appearance and the plaintiff signaled her intention to board. The motorman observed the plaintiff's signal and brought the trolley to a stop at a point beyond or west of the "stop pole." It is the plaintiff's claim that the trolley was brought to a stop 46 feet west of the pole in question. The court finds, however, that the trolley was in fact brought to a stop 20 feet west of the "stop pole."

After the trolley was thus brought to a stop beyond or west of the pole for the plaintiff to board, the plaintiff walked westerly along the sidewalk and then proceeded southerly in a direct line across a portion of the walk and out upon the highway to the then open front door of the standing trolley preliminary to boarding. The distance between the northerly curb of Lombard Street and the northerly rail of the defendant's westbound track is nine feet. When the plaintiff reached a point on the highway a few feet north of the open front door of the standing trolley, she fell and sustained injuries. The fall was caused by a pre-existing layer of snow and ice.

It appears that on the preceding day there had been a snowstorm. It further appears that Lombard Street and other highways in the vicinity were covered some few inches with snow on the night in question, as a result of the storm on the preceding day.

When the plaintiff had previously walked northerly on the easterly sidewalk of Poplar Street and had crossed over from the south side to the north side of Lombard Street to reach the "stop pole", she had experienced at least a little difficulty in perambulating over a slippery walking surface. In short,

walking conditions on the night in question over sidewalks and across highways in the vicinity of Poplar and Lombard Streets were not of the best. The plaintiff knew this to be so.

The plaintiff testified that in the immediate vicinity of the "stop pole" the highway was in fairly good condition; that the snow had either been trampled or had been somewhat cleared away. Although no other evidence was offered on this aspect, the court feels justified in finding that in all probability other passengers previously boarding or alighting from trolleys at the "stop pole" had trampled the snow which had fallen on the preceding day and thereby made it appear that the highway of Lombard Street at this locus had been somewhat cleared of snow by a human agency. The extent that the snow in this area had been trampled and the total absence of a slippery walking surface remain a matter of conjecture. Weather conditions on the night in question were such that patches of trampled snow could be as hazardous to the pedestrian as an ice formation in spots.

The plaintiff's allegations of negligence are five in number: *that the operator of the defendant's trolley failed* "(1) to stop said car on the crosswalk opposite said pole; (2) to have adequate lights on the front of said car; (3) to provide plaintiff with a safe place to board said car in view of the conditions then and there existing; (4) to exercise reasonable care in view of the conditions then and there existing; and (5) that said operator invited and directed plaintiff to board said car at a place which he knew or should have known by the exercise of reasonable care, was unsafe and hazardous."

The second ground of alleged negligence was not developed at the trial by the plaintiff. Accordingly, it only becomes necessary to consider the limits of four of the five alleged grounds upon which liability is claimed.

To one actually a passenger, the defendant, as a carrier of passengers, was under the duty to exercise "the highest reasonable degree of care, vigilance, and forethought, which was consistent with the mode of conveyance and the practical operation of the road." *Hinckley vs. Danbury,* 81 Conn. 241, 243 (quoted in *Bowes vs. New England Transportation Co.,* 126 Conn. 200, 205, and see cases there cited). "This standard of care is fixed by the law." *Maher vs. Connecticut Co.,* 113 Conn. 556, 559. But such carrier is not an insurer of

the passenger's safety. *Bowes* ·case, *supra,* p. 205; *Thorston vs. Groton & Stonington Street Ry. Co.,* 85 Conn. 11, 14. "The general rule applicable....is that the carrier is bound to warn passengers of a danger when the circumstances are such that the carrier ought reasonably to foresee that it exists and that a passenger would not, in the exercise of reasonable care, be likely to observe and apprehend it." *Bowes* case, *supra,* p. 205; and see cases there collected. So, also, it has been held that where a passenger himself knows of a condition likely to produce injury to him, the carrier is not liable if that condition in fact produces·an injury to the passenger. See, generally, *Byrne vs. Connecticut Co.,* 123, Conn. 304; compare *Dunne vs. Connecticut Co.,* 123 id. 680, distinguished in the *Byrne* case at p. 307.

The immediate inquiry concerns the plaintiff's status at the time in question. Was she a passenger? It is apparent that her status was only that of a "prospective passenger." The law is well stated in *Donovan vs. Hartford Street Ry Co.,* 65 Conn. 201 and *Vaughn vs. Healy,* 120 id. 589. Certain principles ennunciated in these cases merit quotation.

"A common carrier is bound to exercise a high degree of care towards those who have put themselves under his care as passengers; but not until they have thus put themselves under his care. Up to that time, although they may have contracted with him for their future transportation, he owes no more care to them than to any third party. His special duty begins when, by coming upon his premises, or in the act of entering his vehicle, the actual relation of passenger to carrier is assumed." *Donovan* case, p. 214.

In the *Vaughn* case our Supreme Court quoted with ap-proval the foregoing excerpt from its opinion in the *Donovan* case, and then commented (p. 592): "In that case we said that the fact that the plaintiff had signaled the driver of a street car to stop, that the latter had seen and responded to the signal, and that the plaintiff had advanced....for the pur-pose of entering the car, was not sufficient to establish the relation of passenger and carrier."

So, also, the *intention* to become a passenger does not ac-celerate the relationship of passenger and carrier. "A present intention to become a passenger does not make the person who is approaching the car with that intention a passenger, nor change as to him the degree of care to be exercised by a street

railway company with reference to others who are using the highway." *Vaughn* case, pp. 592-593, citing *Duchemin vs. Boston Elevated Railway Co.,* 186 Mass. 353, 356 and annotation in 75 A.L.R. 286.

Preliminary to entering a bus or a trolley, that is to say when one with the intention to become a passenger crosses over the shoulder of a road or a portion of the highway, the relationship of passenger and carrier does not come into existence. "While she was crossing the shoulder of the road with the intention of entering the bus....she stood in the same relation to the bus as one who steps from the curb with the intention of boarding a trolley car which has stopped in response to his signal. In neither case is the prospective passenger upon premises under the control of the carrier, and in neither case has he placed himself under its care prior to the time when he is in the act of entering the vehicle. Prior to that time the relation of carrier and passenger has not come into existence, and the carrier owes the prospective passenger only the duty to exercise reasonable care proportionate to the danger involved." *Vaughn case,* p. 593, citing *Moyles vs. Connecticut Co.,* 115 Conn. 80, 83.

The court finds that both the defendant's operator and the plaintiff knew that the highway over which the latter was crossing was more or less slippery; that the condition was a general prevailing one in that vicinity of New Haven on that night. See the latter portion of the eighth paragraph of this memorandum citing the *Byrne* and *Dunne* cases. Since the moderate "danger involved" was known to the plaintiff, there was no duty on the part of the defendant's operator to announce a highway condition which she, as a prospective passenger, already knew. It does not appear from the evidence, and the court cannot find, that the highway where the trolley came to a stop was dangerously slippery to the extent that walking over it would necessarily involve risk of a fall and resulting injuries. This aspect removes as an element in the case the defendant's claim that the plaintiff herself was guilty of negligence which materially contributed in producing her injuries and at the same time removes from consideration the plaintiff's claim that the defendant's operator did not exercise reasonable care proportionate to the danger involved.

Hence the fact that the defendant's trolley did not stop exactly at the "stop pole" was not in itself a violation of duty

owing to the plaintiff: See *St. John vs. Connecticut Co.*, 103 Conn. 641, 645; and cases there cited.

An obvious street danger, in any event, exonerates the carrier and its agents. See 13 *C.J.S. Carriers,* §733, p. 1378. The court expressly finds that whatever danger confronted the plaintiff was obvious under the circumstances of the case. Lombard Street in particular and other highways in the general vicinity thereof were more or less slippery, and the plaintiff knew this to be so. The storm on the preceding day had left its credentials in the nature of a blanket of snow and ice formations in patches on highways and sidewalks.

In a recent case against a town to recover damages for injuries sustained by an individual on an icy formation on a highway, Judge Wynne of the Superior Court remarked, in denying the plaintiff judgment (*Zeider vs. Town of Wood-bridge,* 11 Conn. Sup. 539, 540): "No one would contend that a town in this fickle climate is under a duty to sand every part of every road after winter's icy fangs have taken hold." Research has failed to disclose a duty on the part of a common carrier of persons to sand that area of a highway adjacent to its "stop poles", or in the vicinity thereof. Hence the foregoing quotation is of even stronger application when applied to the facts of the case at bar. But apart from that the court finds that the plaintiff herself knew of the condition of the highway when she left the curb to walk across a portion of the highway preliminary to becoming a passenger.

A further comment on this aspect is deemed warranted. It would be mere speculation to say that had the trolley stopped exactly in front of the "stop pole" the plaintiff would not have fallen and sustained injuries while proceeding from the curb to the open front door of the standing trolley. The highway in that area had not in fact been cleaned of snow, or sanded, although the surface snow had been trampled. How much or how little snow and ice was present at that point is a matter of conjecture. That there was some packed snow, and probably patches of ice, is apparent from the evidence. Hence it does not follow that the plaintiff's misfortune in any event would not have befallen her had the trolley stopped in front' of the pole and not some feet west thereof. See, by way of analogy, *Lambert vs. City of New Haven,* 129 Conn. 647, 654.

The plaintiff argues that sections 3752 and 3755 of the General Statutes, Revision of 1930, support her theory of

liability. The first cited statute "places upon street railway companies the duty to maintain and repair so much of any highway as is contained within eight inches of each side of each rail of its track and provides that municipalities shall not be liable for any injuries due to any defect in such portions of the highway." *Ireland vs. Connecticut Co.,* 111 Conn. 521, 523. The second cited statute by its terms imposes liability upon such companies for damage or injury to person or property by reason of any defect in that portion of a highway of which it is made chargeable with the cost of construction, reconstruction, repair or maintenance. Since the court finds that the plaintiff slipped and fell at a point on the highway well outside of the statutory "eight inches" (§3752), that is to say, some feet north of the northerly rail of the westbound track, the cited statutes are of no assistance to the plaintiff on the question of liability.

In view of the foregoing, the court concludes that the defendant breached no duty owing by it to the plaintiff, a prospective passenger. The facts of the case and the controlling principles of law permit no other conclusion. There is no question but that the plaintiff sustained injuries. The extent and nature of those injuries becomes of little importance in view of the determination of the issues de liability against the plaintiff. The court gives the plaintiff the benefit of a finding of freedom from any negligence which materially contributed in producing her injuries.

Judgment will enter for the defendants to recover its costs.