DONNA JOSEPHSON *v.* MARGARET MEYERS, ADMIN-
ISTRATRIX (ESTATE OF MICHAEL MEYERS) ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and PARSKEY, Js.

Argued December 13, 1979—decision released April 22, 1980

*William F. Gallagher,* with whom were *Roger B. Calistro* and, on the brief, *Robert E. Reilly,* for the appellant-appellee (plaintiff).

*John A. Keyes,* with whom, on the brief was *Thomas F. Keyes, Jr.,* for the appellee-appellant (named defendant).

*Henry W. O'Brien,* for the appellees (defendants Anthony M. Raio et al.).

COTTER, C. J. Donna Josephson, who was fifteen years old at the time of the accident, brought this action by her parent and next friend to recover damages for injuries suffered when she was struck by a car operated by the defendant's decedent Michael Meyers[1] as she was crossing Saltonstall Parkway in East Haven after alighting from a school bus owned by the defendant Chieppo Bus Company (Chieppo) and operated by the defendant Anthony Raio. A second count in the plaintiff's complaint was withdrawn and the jury returned a verdict in favor of the plaintiff on the first count against Meyers and in favor of Chieppo and Raio on the third count. Both the plaintiff and Meyers then filed their separate motions to set aside the verdict and motions for a new trial. Following the denial of their motions, both the plaintiff and Meyers appealed to this court from the judgment rendered on the verdict.

---

[1] The defendant Michael Meyers died several years after the accident and his mother, Margaret Meyers, was subsequently appointed administratrix of his estate and made a party to this action.

The jury could have found the following material facts: After attending the afternoon session of the East Haven High School, at approximately 5:20 p.m. on the evening of January 10, 1973, the plaintiff was transported to her home on a school bus owned by Chieppo and operated by Raio. Taking the same route he had followed since the beginning of the school year, Raio arrived at the designated bus stop on the northerly side of the westbound lane of Saltonstall Parkway in order to discharge the plaintiff and several other students. At the time of the accident, Saltonstall Parkway was a four lane public highway with two lanes running in an easterly direction and two lanes running in a westerly direction. The easterly and westerly lanes were separated by an island. Upon stopping the bus and flashing the warning lights, Raio opened the doors of the bus and the plaintiff and several other students alighted onto the curb alongside the right-hand, northerly side of the road. In order for several of the students, including the plaintiff, who had alighted from the bus at that particular stop to reach their homes, it was necessary for them to cross all four lanes of the parkway. Within seconds after she stepped out from in front the bus, the plaintiff was struck by the vehicle operated by Michael Meyers which was passing the bus while the warning lights were flashing.

The basis of the plaintiff's motion to set aside the verdict in favor of Chieppo and Raio was the claimed impropriety of the trial court's charge which removed from the jury's consideration the specification of negligence based on the defendants'

alleged failure to provide the plaintiff with a reasonably safe place to alight from the school bus.[2] Subject to the standard of care applicable to a common carrier,[3] it was the duty of Chieppo "to use the utmost care consistent with the nature of its business to guard its passengers against all dangers which might reasonably and naturally be expected to occur, in view of all the circumstances." *Robinson* v. *Connecticut Co.*, 122 Conn. 300, 301, 189 A. 453; *Yu* v. *New York, N.H. & H. R. Co.*, 145 Conn. 451, 455, 144 A.2d 56; *Andrea* v. *New York, N.H. & H. R. Co.*, 144 Conn. 340, 344, 131 A.2d 642; *Dokus* v. *Palmer*, 130 Conn. 247, 250, 33 A.2d 315. The duty to its passengers may, under certain circumstances, include giving a warning of dangerous conditions or of impending peril; *Bowers* v. *New England Transportation Co.*, 126 Conn. 200, 205, 10 A. 589; or it may require providing assistance to its passengers while alighting from the carrier. *Yu* v. *New York, N.H. & H. R. Co.*, supra; *Andrea* v. *New York, N.H. & H. R. Co.*, supra. But it is unquestionably the duty of the carrier to provide its passengers with a reasonably safe place to

---

[2] The plaintiff also alleged negligence on the part of Raio in opening the door of the bus before all vehicles approaching the bus had stopped; in failing to look in the rear view mirror to determine that all traffic had stopped; and in failing to warn the plaintiff of impending peril. These additional specifications of negligence were unaffected by the trial court's charge challenged by the plaintiff and were presented to the jury who returned a verdict thereon in favor of the defendants. See *Andrea* v. *New York, N.H. & H. R. Co.*, 144 Conn. 340, 131 A.2d 642.

[3] Following the decision in *Hunt* v. *Clifford*, 152 Conn. 540, 545, 209 A.2d 182, in which we held that a school bus company was not a common carrier for purposes of determining the applicable standard of care, the legislature enacted Public Acts 1965, No. 303 § 2, codified in § 52-557c of the General Statutes, which made the standard of care applicable to school bus operators the same as that applicable to common carriers of passengers for hire.

alight. *Roden* v. *Connecticut Co.*, 113 Conn. 408, 410, 115 A. 721; *St. John* v. *Connecticut Co.*, 103 Conn. 641, 644, 131 A. 396. Thus, in *Roden* for example, the defendant bus company was held liable for the injuries suffered by a seven-year-old boy who was struck by a truck after being discharged onto the middle of a roadway by the operator of the bus. In view of the duty upon the trial court to submit to the jury only those issues which are relevant to the pleadings and the facts in evidence; *Panaroni* v. *Johnson,* 158 Conn. 92, 110, 111, 256 A.2d 246; we must determine whether the evidence adduced at trial required the trial court to deliver the instructions which it presented to the jury. See *Novak* v. *Anderson,* 178 Conn. 506, 423 A.2d 147; *Bonner* v. *Winter,* 175 Conn. 41, 48, 392 A.2d 436; *Mack* v. *Perzanowski,* 172 Conn. 310, 313, 374 A.2d 236; *Katsetos* v. *Nolan,* 170 Conn. 637, 654, 368 A.2d 172.

The specification of negligence which the court removed from the jury's consideration alleged that Raio was negligent "[i]n that he discharged the Plaintiff on the northerly side of said Saltonstall Parkway when in the exercise of reasonable care he should have discharged said Plaintiff on the southerly side of said Saltonstall Parkway" so as to obviate the need for her to cross the parkway in order to reach her home. To support her contention of negligence, the plaintiff introduced evidence that on several occasions prior to the night of the accident, the bus driver would have to beep the horn in order to get cars to stop and the students themselves, in order to cross the road, would have to direct traffic and signal automobiles to stop. In addition, the plaintiff showed that the route followed by the bus during the prior school year discharged the plaintiff on the southerly side of the

parkway and that the route change for the 1972–1973 school year requiring that the plaintiff be discharged on the northerly side of the parkway was necessitated by construction work which had been completed before the accident had occurred.

After reviewing the evidence adduced at trial, we conclude that the charge complained of was proper. The mere fact that the plaintiff was required to cross the street after alighting from the school bus in order to arrive at her home does not render the bus stop where the plaintiff alighted unreasonably dangerous. There was evidence which showed that the plaintiff as well as other students had alighted from the bus at the stop in question several times in the past and crossed the parkway without incident. In addition, there was evidence, which the jury presumably accepted, to the effect that Raio followed his scheduled route and complied with all of the statutory requirements for the safe discharge of his passengers.[4] Although it is true

---

[4] [General Statutes] Sec. 14-277. OPERATORS' DUTIES ON STOPPING BUS. "The operator of any school bus, when about to bring his bus to a stop to receive or discharge passengers, shall signal his intention to do so by causing the flashing signal lights to be displayed for not less than fifty feet before he brings the bus to a stop so as to be clearly visible to the operator of any oncoming or overtaking vehicle or motor vehicle. The operator of such school bus, having brought his vehicle to a stop, shall not open the door to receive or discharge passengers until all vehicles approaching from the front and overtaking from the rear have stopped in compliance with the indicated signal to stop. After all passengers are safely aboard or discharged and safely off the highway, such operator shall extinguish the stop lights. He may then permit all standing traffic to pass before resuming forward progress. While such school bus is in motion the doors shall remain closed at all times and all passengers shall be required to remain seated. No operator of any school bus shall stop his vehicle on the main traveled portion of the highway to receive or discharge passengers when existing highway shoulders or adequate highway width is available or where curbs, bus stops or special facilities exist."

that compliance with a statute does not necessarily preclude a finding of negligence, where the facts are similar to those contemplated by the statute and no special or unusual circumstances or dangers are present, a defendant satisfies his duty of care by complying with the statute. See *Trombly* v. *New York, N.H. & H. R. Co.*, 137 Conn. 465, 467-68, 78 A.2d 689; *Kinderavich* v. *Palmer*, 127 Conn. 85, 100, 15 A.2d 83; Prosser, Torts § 36, pp. 203-204 (4th Ed. 1971); Restatement (Second), Torts § 288c. The statutory scheme regarding the transportation of school children contemplates that students alighting from a school bus may have to cross the road in order to get home[5] and the plaintiff offered no evidence to establish that at the time of the accident there were any unusual circumstances which would require the defendant Raio to deviate from his assigned route. Accordingly, we conclude that there was no error in the trial court's charge to the jury regarding the negligence of the defendants Chieppo and Raio.

Both the plaintiff and the defendant Meyers claim error in the denial of their separate motions for a new trial which were both predicated on alleged juror misconduct and in the exclusion, at the hearing on these motions, of testimony from two of the jurors regarding that misconduct.

---

[5] Section 14-279 of the General Statutes requires the operator of any vehicle to "immediately bring his vehicle to a stop not less than ten feet from the front when approaching and not less than ten feet from the rear when overtaking or following any registered school bus displaying flashing signal lights, except at the specific direction of a traffic officer" and prohibits the operator from proceeding until the bus no longer displays the flashing signal lights. This section, in conjunction with § 14-277 of the General Statutes, evidences a legislative intent to create a safety zone within which school children can safely cross a street after alighting from a school bus.

After two days of deliberations, the jury reached its unanimous verdict which the court accepted in the usual fashion. Under the procedure for receiving, accepting and recording a verdict which has been followed in our courts, "the final assent of the jurors, given after the verdict has been read aloud by the clerk, accepted and ordered recorded by the court, and read aloud a second time by the clerk, makes the verdict. . . . Ample opportunity is thus afforded, and designedly so, for the court, counsel, and the jurors to comprehend the verdict and to cure any misunderstanding before the final assent." *Ferris* v. *Hotel Pick Arms, Inc.*, 147 Conn. 72, 74, 157 A.2d 106.

In this case the verdict was read by the clerk to the jury twice and then inquiry was made whether they all assented to the verdict as read. All of the jurors assented. The verdict was accepted and recorded and the jurors were subsequently discharged. Several days thereafter, the plaintiff's attorney received a letter from one of the jurors which indicated that the author and another juror did not agree to the verdict as rendered even though they had assented to it in open court. On the basis of this letter, the parties moved for a new trial alleging that the assent to the verdict by the jurors mentioned in the letter was acquired by the misconduct of the foreman in failing to deliver a note to the trial judge which those two jurors requested him to do. At the hearing on the parties' motions, the plaintiff's counsel stated that he intended to elicit testimony from those two jurors regarding the contents of the note and its import on the verdict as rendered. The objection to that testimony by the defendants Raio and Chieppo was sustained and the plaintiff took an exception. In her offer of

proof, the plaintiff indicated that the purpose of the testimony regarding the events surrounding the note was to establish enough facts which would indicate that "had the note been submitted that there would have been a hung jury in this case."

It has been firmly established in this state that a juror is no longer incompetent to testify in an attempt to impeach the verdict rendered in either a civil or criminal case. See *Hamill* v. *Neikind,* 171 Conn. 357, 370 A.2d 959, and *Aillon* v. *State,* 168 Conn. 541, 363 A.2d 49. Even before *Aillon,* this court recognized in *State* v. *Savage,* 161 Conn. 445, 450, 290 A.2d 221, that the trial court may question jurors to determine whether an incident of potential misconduct occurred. In *Aillon,* however, this court ventured further and discussed the nature of the evidence which may permissibly be acquired through the testimony of jurors. Adopting a rule which applies the parol evidence rule to a jury's verdict, the court, quoting from *Wright* v. *Illinois & Mississippi Telegraph Co.,* 20 Iowa 195, 210, stated in *Aillon* "[t]hat affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner." Although not quoted in *Aillon,* the court in *Wright* stated further "that such affidavit to avoid the verdict *may not be received to show any matter which does essentially inhere in the verdict itself, as that the*

*juror did not assent to the verdict;* that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast." (Emphasis added.) Id. See also 8 Wigmore (McNaughton Rev.) Evidence § 2349. Thus, in *Aillon,* "this court ruled that jurors were competent to testify to the occurrence of incidents during trial or during their deliberations which might have affected the result of the trial, but could not testify as to the impact of such incidents on their verdict." *Hamill* v. *Neikind,* supra, 361. Upon receiving evidence as to those incidents, it is for the trial court to determine whether they warrant a reversal of the verdict. Although *Hamill* and *Aillon* are distinguishable in that they involved inquiries into extraneous influences upon the jury, the principles enunciated therein are equally applicable to situations such as in the present case where the alleged misconduct occurred wholly within the jury room.

Referring to the letter addressed to the plaintiff's attorney which was made an exhibit at the hearing on the parties' motions and to the plaintiff's offer of proof, it is clear that the testimony sought to be elicited did "essentially inhere" in the verdict. The plaintiff intended to show that the verdict actually rendered by the two jurors was conditioned on a negative answer to the question contained in the note that was to be delivered to the trial judge. Under the principles previously stated, the fact that a juror's verdict was conditional is not admissible since it clearly implicates

the mental processes of that juror.[6] *Aillon,* supra, 551. See also *United States* v. *Weiner,* 578 F.2d 757 (9th Cir., 1978) (affidavit stating that a juror's vote was guilty with reservations was inadmissible to impeach the guilty verdict assented to in open court by that juror).

The defendant Meyers also assigns error in the denial of her motion to set aside the verdict in favor of the plaintiff in the amount of $70,000 as excessive. "The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. *Waldron* v. *Raccio,* 166 Conn. 608, 618, 353 A.2d 770; *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 19, 347 A.2d 102." *Katsetos* v. *Nolan,* 170 Conn. 637, 656, 368 A.2d 172. " 'The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake, or corruption.' *Birgel* v. *Heintz,* 163 Conn. 23, 28, 301 A.2d 249; Maltbie, Conn. App. Proc. § 197." *Thomas* v. *Katz,* 171 Conn. 412, 370 A.2d 978.

The evidence presented to the jury indicated that as a result of the accident, the plaintiff suffered a moderately severe brain concussion with retro-

---

[6] If the plaintiff intended only to show by the jurors' testimony that the foreman failed to deliver the note to the trial judge, this fact alone would not have supported the reversal of the verdict since the jurors assented, in open court, to the verdict, which the trial court accepted, without first obtaining an answer to their question. We cannot comprehend, therefore, how the failure to deliver the note to the judge improperly influenced the verdict of those two jurors.

grade amnesia; a fracture of both rami of her left pelvis; a fracture of the proximal one-third of the shaft of her left fibula; a comminuted fracture in the midshaft of her left tibia with a large butterfly fragment; injury to her bladder; and several abrasions. Following the accident, the plaintiff was hospitalized for thirty-one days on two separate occasions. The injury to her tibia required an open reduction and internal fixation with a six inch plate held in place by five screws. The plate and screws were surgically removed the following year. As a consequence of the surgery performed on the plaintiff, she has a permanent scar on her left leg measuring ten inches in length and one inch wide. The plaintiff sustained a permanent disability of approximately 5 percent in her left leg below the knee, and testified that she experiences pain in her leg and that her leg sometimes gets swollen if she stands for an extended period of time. On the basis of the foregoing evidence, which must be given the most favorable construction to which it is reasonably entitled in support of the verdict, the jury could fairly and reasonably reach the verdict it rendered so that the trial court did not abuse its discretion in denying the defendant's motion to set it aside. *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305; *Camp* v. *Booth,* 160 Conn. 10, 11, 273 A.2d 714.

There is no error.

In this opinion the other judges concurred.