LAKESHIA GREEN *v.* H.N.S. MANAGEMENT
COMPANY, INC.
(AC 25666)

Schaller, Flynn and Gruendel, Js.

Argued May 26—officially released October 4, 2005

*John A. Blazi,* for the appellant (defendant).

*Frederick P. Leaf,* with whom, on the brief, was *Susan Shaw,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, H.N.S. Management Company, Inc., doing business as Connecticut Transit, appeals from the judgment of the trial court rendered after the jury's verdict in favor of the plaintiff, Lakeshia Green, in this personal injury action. On appeal, the defendant claims that the court improperly submitted certain issues to the jury that were unsupported by the evidence.[1] We agree and, accordingly, reverse the judgment and remand the case for a new trial.

The jury reasonably could have found the following facts. On the morning of March 17, 2000, rain and sleet were falling and slush had accumulated on the ground. As part of her morning commute, the plaintiff boarded

---

[1] The defendant also claims that the court improperly instructed the jury in a manner that permitted it to find that it was negligent if the jury found that there was merely moisture on the floor of the bus as opposed to snow and ice. Because we find that the defendant's first issue is dispositive, we need not address its instructional claim.

a bus operated by the defendant and proceeded to the back of the bus to find a seat. There were other passengers already on the bus. While the plaintiff was walking in the aisle, she slipped on ice and slush on the floor of the bus just as the driver started to move the bus away from the curb. The plaintiff fell to the floor, injuring her left knee.

The plaintiff brought a one count complaint against the defendant in which she alleged that as a result of the defendant's negligence, she sustained personal injuries and damages. In her complaint, the plaintiff alleged that as she was "walking down the aisle of [the] bus in an effort to take a seat, the operator of [the] bus suddenly, without warning, and without smoothly and gradually accelerating, pulled away from the bus stop causing the plaintiff to lose her balance on the water, snow and ice on [the] aisle" and fall to the floor. The complaint included allegations of several specifications of negligence.[2] The defendant denied having been negli-

---

[2] The complaint set forth several specifications of negligence, which can be summarized as follows: (1) the bus operator was inattentive in not allowing passengers a reasonable amount of time to walk in the aisle of the bus and take seats before the bus left the stop; (2) the bus operator failed to manage and operate the bus so that the plaintiff could walk to her seat in safety; (3) the bus operator failed to give the plaintiff any warning regarding the dangerous condition of the aisle of the bus or of his intention to drive away from the bus stop before she reached her seat so that she could avail herself of the handrails; (4) the bus operator failed to operate, steer or guide the bus in such a way as to permit the plaintiff to walk to her seat safely; (5) the bus operator failed to view or inspect the aisle of the bus to determine whether it was safe to permit passengers to walk to their seats; (6) the bus operator failed to use due care as would a reasonably prudent person under the circumstances; (7) the defendant failed to meet its duty as a common carrier of passengers to provide the plaintiff with a safe place to walk to her seat; (8) the defendant failed to properly view and inspect the aisle of its buses to determine whether it was safe for passengers to walk while the bus was driving away from the bus stop; (9) the defendant failed to train and instruct the operators of its buses in the need to wait for boarding passengers to seat themselves or to warn passengers, such as the plaintiff, that the bus was about to depart from the bus stop, when the aisle of the bus was wet and slippery from ice, snow and water; (10) the defendant failed to place nonslip mats or other devices on its buses when snow, sleet

gent and raised comparative negligence as a special defense.

After trial, in its instructions to the jury, the court summarized the allegations made by the plaintiff in her complaint, including the specifications of negligence. Neither party requested interrogatories. The plaintiff's verdict form included sections for total damages, comparative percentage of responsibility for each party and total recoverable damages. It did not, however, contain interrogatories regarding any of the specifications of negligence that the plaintiff alleged in the complaint. The jury returned a plaintiff's verdict awarding damages of $15,000 with a 45 percent reduction for her comparative negligence. The defendant filed a motion to set aside the verdict, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

I

Before addressing the merits of the defendant's claims, we must first determine whether our review of those claims is barred by the general verdict rule. "The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 558, 616 A.2d 819 (1992). "Under the general verdict rule, if a jury [returns] a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand;

---

or rain was falling to provide for the reasonable safety of its passengers; and (11) the defendant failed to use due care as would a reasonably prudent person under the circumstances then and there existing.

only if every ground is improper does the verdict fall." (Internal quotation marks omitted.) *DeGennaro* v. *Tandon*, 89 Conn. App. 183, 198, 873 A.2d 191, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005). "A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts." (Internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993).

Our Supreme Court has held that "the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Internal quotation marks omitted.) *Tetreault* v. *Eslick*, 271 Conn. 466, 472, 857 A.2d 888 (2004).

In this case, although the plaintiff's one count complaint alleged numerous factual theories, it asserted only one legal theory of recovery—negligence. The plaintiff argues that the general verdict rule applies because the various specifications of negligence are actually different theories of recovery. The plaintiff further argues that in the absence of interrogatories, it is improper to speculate as to which of the complaint's eleven specifications of negligence the jury used as a basis for its verdict and that it was incumbent on the defendant to request interrogatories on each of the specifications of negligence in the complaint. We disagree.

In addition to limiting application of the rule to the five situations previously set forth, our Supreme Court in *Curry* provided further guidance on when the rule is *inapplicable*. See *Curry* v. *Burns*, supra, 225 Conn. 794–95. In so doing, the court discussed *Ziman* v. *Whitley*, 110 Conn. 108, 147 A. 370 (1929), which overruled prior cases that had applied the rule to "different specifications of fact alleged in support of one essential right . . . ." Id., 116. In outlining the proper parameters of the general verdict rule, *Curry* stated that the rule does not apply if a plaintiff submits to the jury several different specifications of negligent conduct in support of a single cause of action for negligence. *Curry* v. *Burns*, supra, 787. "The rationale [as expressed in *Ziman*] for declining to apply the rule in such a situation is that the various grounds of negligence alleged are often so interlocked as to make it difficult to consider them separately, and formulating interrogatories to obtain separate findings on the various claims would complicate the work of court, jury and counsel." (Internal quotation marks omitted.) Id. As explained in *Ziman*, "[w]here . . . different specifications of fact are alleged in support of one essential right, as where various grounds of negligence are alleged as a basis for a recovery for injuries resulting from a particular accident, it is the sounder policy to permit an appellant to take advantage upon appeal of errors affecting one specification of negligence only, even though no interrogatories have been submitted." *Ziman* v. *Whitley*, supra, 116.

As discussed, in her complaint, the plaintiff asserted only one theory of recovery—negligence—and alleged several specifications of negligent conduct in support of that single cause of action.[3] Through those specifications of negligence, the plaintiff sought to establish that the bus driver's allegedly negligent operation of the bus,

---

[3] See footnote 1.

in conjunction with the defendant's alleged negligence with regard to the condition of the aisle, caused her to slip and fall. The interlocking nature of the specifications of negligence and the plaintiff's general allegation regarding the factors that caused her fall would make it difficult to consider each separately. For the reasons discussed in *Ziman* and outlined in *Curry*, we conclude that the general verdict rule is inapplicable in this case.[4] We are not precluded, therefore, from reversing the judgment in favor of the plaintiff if we conclude that *any* ground on which the jury could have based its verdict was improper.

## II

The defendant claims that the court improperly submitted to the jury certain issues that were unsupported by the evidence. Specifically, the defendant argues that the court improperly instructed the jury on the plaintiff's specification of negligence relating to the alleged failure of the defendant to warn the plaintiff about the allegedly dangerous condition of the aisle of the bus. The defendant contends that there was no evidence to establish that the slippery condition created by snow and ice on the aisle of the bus had existed for a sufficient period of time to give rise to a duty to warn.[5]

As a preliminary matter, we identify the applicable standard of review and set forth the legal principles that govern our resolution of the defendant's claim. "A challenge to the validity of jury instructions presents a

[4] See also *Doe* v. *Yale University*, 252 Conn. 641, 662 n.19, 748 A.2d 834 (2000) (concluding that general verdict rule did not apply because plaintiff asserted only one legal theory of recovery).

[5] The defendant also argues that the court improperly included the plaintiff's specifications of negligence relating to the defendant's alleged breach of a duty to provide mats on the aisle of the bus, and its alleged failure to inspect the floor of the bus. We need not address those issues because we conclude that the issue of whether the court improperly submitted the specification of negligence relating to an alleged failure to warn is dispositive.

question of law. Our review of this claim, therefore, is plenary. . . . We must decide whether the instructions, read as a whole, properly adapt the law to the case in question and provide the jury with sufficient guidance in reaching a correct verdict." (Citations omitted.) *Otero* v. *Housing Authority*, 86 Conn. App. 103, 106–107, 860 A.2d 285 (2004). "[T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 289–90, 838 A.2d 135 (2004).

"[T]he trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. . . . Accordingly, the right to a jury instruction is limited to those theories for which there is any foundation in the evidence." (Internal quotation marks omitted.) *Bostic* v. *Soucy*, 82 Conn. App. 356, 359, 844 A.2d 878, cert. denied, 269 Conn. 912, 852 A.2d 738 (2004). "It is error to submit a specification of negligence to the jury in respect to which no evidence has been offered." *Mack* v. *Perzanowski*, 172 Conn. 310, 313, 374 A.2d 236 (1977).

A common carrier, such as an operator of a motor bus, has a duty "to use the utmost care consistent with the nature of its business to guard its passengers against all dangers which might reasonably and naturally be expected to occur, in view of all the circumstances." (Internal quotation marks omitted.) *Josephson* v. *Meyers*, 180 Conn. 302, 305, 429 A.2d 877 (1980); see also *Belledeau* v. *Connecticut Co.*, 110 Conn. 625, 627–28, 149 A. 127 (1930) (common carrier has duty to exercise highest degree of care and skill that reasonably may be expected of intelligent, prudent persons engaged in business of carrying passengers for hire in view of instrumentalities employed and dangers reasonably to

be apprehended). The high standard of care to which a common carrier is held, however, does not make it an insurer of the plaintiff's safety. *Bowes* v. *New England Transportation Co.*, 126 Conn. 200, 205, 10 A.2d 589 (1940). "[A] common carrier is not required to guard a passenger against all hazards . . . ." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 85, p. 249; see also *Krentzman* v. *Connecticut Co.*, 136 Conn. 239, 243–44, 70 A.2d 133 (1949) (common carrier did not breach duty of care where plaintiff passenger lost footing while on running board of trolley due to jostling by rowdy passengers because it had no opportunity or means to restrain other passengers).

A common carrier has a duty to warn passengers of a danger when the circumstances are such that a passenger would not, in the exercise of reasonable care, be likely to observe and apprehend it. *Bowes* v. *New England Transportation Co.*, supra, 126 Conn. 205. A common carrier fulfills its duty to passengers when it warns its passengers of dangerous conditions or when it remedies the dangerous conditions. See *Dunne* v. *Connecticut Co.*, 123 Conn. 680, 681–82, 195 A. 183 (1937). Before such a duty arises, however, the dangerous condition must have existed for a sufficient length of time so that the driver, exercising the high degree of care required in being attentive to the condition of the bus and in the inspection of it, should have discovered it. Id., 682.

In her complaint, the plaintiff alleged that at the time she fell, "and for a long time prior thereto, the aisle of the bus . . . was in a dangerous, defective, and hazardous condition in that [it] was wet and slippery, from water, snow and ice which had come onto the bus from other passengers who had boarded the bus ahead of the plaintiff at this and other bus stops." The complaint also included a specification of negligence alleging that "the operator of the bus failed to give the plaintiff a

timely warning or any warning whatsoever of the slippery and hazardous condition of the aisle of the bus which the plaintiff . . . had to encounter upon walking down the aisle of the bus to a seat . . . ."

At trial, the evidence regarding the condition on the bus consisted primarily of the testimony of the plaintiff who testified as follows. On the morning that she was injured, rain and sleet were falling and there was "slush all over the place." She "was proceeding to the back of the bus and there was slush, I guess, on the floor from previous people boarding the bus." She thought that "ice on the floor" of the bus and the manner in which the driver proceeded away from the curb caused her to slip and fall. She also testified that the floor "was wet with ice on it." On cross-examination the plaintiff testified that other passengers already were on the bus when she boarded it and that they had tracked water onto the floor of the bus, as she had. In addition, she testified that the water previously tracked onto the floor of the bus would have been visible to her. Another witness testified that the weather that morning was "rainy" and that the aisle of the bus did not have snow or ice on it but that it was wet.

When it instructed the jury, the court stated: "[T]he plaintiff has alleged several different acts of negligence that she is claiming [caused her injury]. In order for her to recover, she must prove at least one of those alleged claims of negligence on the part of the defendant . . . . Now, as far as the pleadings are concerned, I am not going to send these in to you, but I'm simply going to ask you to remember what I'm telling you [about] the nature of the claims as they appear within the pleadings. . . . [The plaintiff alleges that while] walking on the aisle of the bus . . . that she fell, and that . . . the bus was in a dangerous, defective and hazardous condition because it was wet and slippery from water, snow and ice. [The plaintiff further claims]

that the operator of the bus didn't give her any warning when it suddenly commenced to move the bus, and, therefore . . . she lost her balance on the water, snow and ice on the aisle. . . . [She also alleges that the operator of the bus was negligent in that he] failed to give her any warning that the floor was slippery and in a hazardous condition . . . . If you find there was an accumulation of trodden snow or ice which rendered the floor of the bus dangerous to passengers leaving or entering the bus, then the question is whether the [bus] operator knew or should have known of that condition . . . . The knowledge of the defendant, acting through [its] bus operator, [can be established either by] . . . actual notice . . . or it may be implied or constructive notice . . . . [To establish constructive notice] the condition must have existed for a sufficient time to have enabled [the bus operator] to discover it . . . . What constitutes sufficient time to discover depends on all of the circumstances that existed at that time and place."[6]

The defendant argues that there was no evidence to establish that it had actual notice of the allegedly dangerous condition of the aisle or that the condition had existed for a sufficient period of time to establish constructive notice. The defendant contends that absent notice of the condition, it had no duty to warn the plaintiff and that the court, therefore, should not have submitted the specification of negligence relating to its failure to warn.

In *Dunne* v. *Connecticut Co.*, supra, 123 Conn. 680, the plaintiff was injured when she slipped and fell on a layer of ice on the step of the defendant's bus while

---

[6] The defendant took exception to the court's charge, stating that there was "no evidence from which the jury could reasonably infer that [the allegedly dangerous condition caused by ice and snow] existed for such a long period of time that the bus driver could be charged with constructive notice . . . ."

she was alighting. Our Supreme Court affirmed the verdict in favor of the plaintiff because there was evidence from which the jury could find that the layer of ice existed on the step of the bus for a sufficient length of time such that the driver could be charged with constructive notice of it and that, therefore, the driver should have discovered the ice and either remedied the dangerous condition or warned the plaintiff.[7] Id., 681–82.

In contrast to *Dunne*, our Supreme Court set aside a verdict in favor of the plaintiff in *Byrne* v. *Connecticut Co.*, 123 Conn. 304, 195 A. 184 (1937). In *Byrne*, the plaintiff similarly had claimed that she had been injured when she slipped and fell on a patch of ice on the step of the defendant's bus while alighting. Id., 305. Although there was evidence that "a large crowd of passengers [was] on the bus"; id.; rain and sleet were falling, freezing, hard crusty snow was on the ground and icicles were hanging from trees, the court stated that "[t]here was no evidence that there had been any formation of ice on the step previous to the accident or that the driver knew there was any ice there or could have seen the patch described by the plaintiff from where he sat." Id., 305–306. The court concluded that the defendant could not be liable for negligence on the basis of the driver's failure to warn because the plaintiff "saw the ice before she stepped upon it," the driver did not have actual notice of the ice and the circumstances of the case did not permit an inference that the ice had existed for a sufficient period of time to establish constructive notice. Id. The court stated: "The bare description [that

---

[7] "[I]t is unquestionably the duty of the carrier to provide its passengers with a reasonably safe place to alight." *Josephson* v. *Meyers*, supra, 180 Conn. 305–306; see also 14 Am. Jur. 2d 329, Carriers § 985 (2000); annot., Liability of Motorbus Carrier to Passenger Injured Through Fall While Alighting from Vehicle, 9 A.L.R.2d 938, § 5 (1950); annot., Liability of Carrier for Injury to Passenger as Result of Ice, Snow, or Rain on Exposed or Interior Portion of Car or Vessel, 117 A.L.R. 522, 536–37 (1938).

the plaintiff] gave of the ice, as a small patch three inches in diameter which felt hard when she stepped upon it, in connection with the fact that many people had been getting on and off the [bus], would not permit an inference that the ice had been on the step any particular length of time; it might have been caused by the passengers who boarded the [bus] at the preceding stop or have formed after that stop. The only basis of negligence would be that the driver in the course of the operation of the bus should have taken the precaution to examine the step just before [the plaintiff] alighted and to see if there was ice upon it. Translated into terms of duty, this would mean that the driver was under an obligation at every stop the bus made to examine the step. Under the existing conditions this was too high a measure of care to impose upon the defendant." Id., 306–307.

In determining that the defendant could not be held liable, the court in *Byrne* distinguished *Connelly* v. *Connecticut Co.*, 107 Conn. 236, 140 A. 121 (1928), in which the verdict in favor of the plaintiff was affirmed because the driver had actual notice that ice had formed on the step. *Byrne* v. *Connecticut*, supra, 123 Conn. 306. *Byrne* also distinguished *Dunne* on the ground that the plaintiff in that case "did not see the ice on the step of the bus until she slipped upon it, the ice covered a substantial portion of the step, its nature indicated that it had been there some considerable time and the driver himself used the step shortly before the accident and had every opportunity to see it."[8] Id., 307.

[8] To the extent that the plaintiff alleged that her fall was caused by *water* on the aisle of the bus, this case is similarly distinguishable from *Dunne* because the plaintiff's testimony indicated that she either saw or was aware of the water on the floor of the bus prior to slipping. Common carriers have no duty to warn a passenger of a danger when he or she already has apprehended it. See *Bowes* v. *New England Transportation Co.*, supra, 126 Conn. 205.

In this case, as in *Byrne*, there was no direct evidence that the driver had either actual or constructive notice of the alleged dangerous condition caused by ice on the aisle of the bus, which would have given rise to a duty to warn the plaintiff. The court instructed the jury in a manner that permitted it to make inferences from "all the circumstances that existed at that time and place" when determining whether the dangerous condition had existed for a sufficient period of time to establish constructive notice. In light of *Byrne*, however, the evidence of icy and snowy weather conditions, along with evidence that passengers already on board the bus could have tracked ice onto the aisle of the bus, did "not permit an inference that the ice had been on the [aisle] any particular length of time; it might have been caused by the passengers who boarded"; id., 306; immediately prior to the plaintiff.

Absent the impermissible inference, there was no evidence to establish that the driver had notice of the allegedly dangerous condition. Absent notice, the driver had no duty to warn the plaintiff. Absent a duty to warn, it was improper for the court to submit to the jury the specification of negligence relating to the defendant's alleged failure to warn the plaintiff of the allegedly dangerous condition caused by ice in the aisle of the bus. As we determined in part I, the general verdict rule does not apply to this case. Accordingly, because the jury could have based its verdict on a specification of negligence that was not properly before it, reversal is appropriate.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.