STATE ex rel., THOS. R. SENTER, Defendant in Error, v. F. M. COWELL et al., Plaintiffs in Error.

**Kansas City Court of Appeals, May 6, 1907.**

1. **ATTACHMENT: Sheriff's Return: Parol Evidence.** The return of a sheriff on a writ of attachment is not subject to attack in the case in which it was made, either before or after judgment; and may not be overthrown in an equity proceeding unless the judgment plaintiff aided and abetted in its falsity; but where the return is indefinite and uncertain the date of the return of the property to the attachment defendant may be shown.

2. ———: ———: ———: **Validity: Consistency.** The positions that evidence to impeach a sheriff's return is incompetent and that the return is void are conflicting and neither ought to be sustained.

3. ———: **Bond: Validity: Estoppel.** The party causing the issuance of a writ of attachment can not be permitted to show the process which he had sued out and "set agoing" was not executed according to law.

4. ———: ———: **Petition: Trial Practice.** After judgment it is too late to object that a petition only averred ownership by alleging that the sheriff under the attachment writ levied and seized as the property of the relator, etc., does not state a cause of action.

5. **TRIAL PRACTICE: Quotient Verdict: Agreement.** Quotient verdicts are condemned, but the party assailing a verdict on that ground must show that there was a prearrangement among the jurors to accept the quotient as their verdict, since the presumption of law is that there was no such prearrangement.

Error to Schuyler Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*Campbell & Ellison, Mayne & Hazleton, E. Schofield* and *Higbee & Mills* for plaintiffs in error.

(1.) The sheriff's return on the writ of attachment does not show whose property was attached; it does not state that relator had any interest in the property attached, or that it was taken out of his possession. The court erred in permitting the return to be read in evidence. A levy on mules, generally, without stating whose they were, or in whose hands they were is not a good levy; the return and levy are bad. Anderson v. Scott, 2 Mo. 15; Newton v. Strang, 48 Mo. App. 540; Reitz v. People, 77 Ill. 518; Foster v. Illinski, 3 Ill. App. 345; Meuly v. Zeigler, 23 Tex. 88; Offtendinger v. Ford, 86 Va. 917. (2) The return expressly states that the property was returned to T. R. Senter; this under date of October 29, the day of the levy. The court erred in permitting relator to show against the return offered in evidence by relator as the foundation of his case, that the property was detained for a longer time than one day; also in permitting evidence of the death of any of the sheep. The return is conclusive that all of the attached property was returned to relator, and its recitals are conclusive in this action. Anthony v. Bartholow, 69 Mo. 194; Smoot v. Judd, 184 Mo. 518; Realty Co. v. Packing Co., 112 Mo. App. 271. (3) If an intricate key be found which exactly fits a complicated lock, all reasonable men would agree the key was made for the

lock. It is agreed that the slip of paper offered in evidence in support of the motion for new trial was found in the jury room among what appeared to be the ballots of the jury immediately after the jury reported. There are twelve sums set down, aggregating 11,898; it is divided by twelve, and the quotient is 991½; the verdict was $991.50. *Res ipsa loquitur.*

*Smoot & Smoot* for defendant in error.

(1) In an action on the bond, it is no defense that the return on the attachment does not show a levy made according to the statute, if a levy *de facto* was made. Drake on Attachment (4 Ed.), section 173a; Shinn on Attachments, sec. 189; State ex rel. v. Goodhue, 74 Mo. App. 166; State ex rel. v. Stark, 75 Mo. 566; Hensley v. Rose, 76 Ala. 373. (2) The facts in this case upon the question of a quotient verdict does not show that the verdict finally returned was anything more than the verdict of all the jury. After having seen the result of an average they may well adopt it where unliquidated sums are in controversy and it is nothing more than the compromise of opinions. Murdock v. Kimberlin, 23 Mo. App. 529.

BROADDUS, P. J.—This is a suit for damages on alleged breach of an attachment bond. On the twenty-fifth of October, 1900, the defendants herein, F. C. Longee and E. H. Longee, commenced an attachment suit against the plaintiff herein and executed an attachment bond in the usual form in the sum of sixteen hundred dollars with defendants, Cowell and Bartlett, as sureties, and caused a writ of attachment to be issued, under which certain personal property of the plaintiff was seized, as shown by the following return of the sheriff: "On the twenty-ninth of October, served the within writ by taking possession of three hundred and twenty-six sheep, six head of horses, two replevined

afterwards, one farm wagon, one set of harness, two cultivators, two breaking plows, one seeder, one corn planter, twenty-one hogs (replevined), one disk harrow, seventy-five acres of corn in field, one corn harvester, one drag harrow, and by directions of plaintiff's attorney returned the same to the defendant, T. R. Senter. Feed bill and pasture bill attached to this writ." On the fourteenth day of February, 1901, the following entry was made by the clerk of the circuit court on his records: "Now at this day, this case is voluntarily dismissed at plaintiff's costs," etc.

The plaintiff introduced evidence to the effect that the property attached was retained by the sheriff for about sixty days. The defendants objected to the competency of this evidence on the ground that it tended to contradict the return of the sheriff upon the writ of attachment, which objection was overruled. The plaintiff offered evidence tending to show the amount of damages he sustained by reason of the seizure of his property under the proceedings. The verdict and judgment were for the plaintiff and defendants appealed.

It is contended by appellant that the court committed a serious error in admitting evidence to show that the sheriff retained the attached property for a greater length of time than shown by the return of the sheriff. In other words, it is the contention of defendants that said return shows that the property was released by the sheriff on the date of its seizure by him. The return is informal and indefinite. The return is clear enough that the property was seized on the twenty-ninth of October; and taken in connection with his endorsement on the writ that he received it on the twenty-fifth day of October, 1900, we may reasonably infer that the seizure was made in October of that year, although no year is mentioned. After mentioning the property seized, the return concludes with the sentence: "And by directions of the plaintiff's at-

torney returned the same to the defendant, T. R. Senter."
It would be a doubtful construction, at least, to con-
clude that the sheriff meant to say that he returned
the property on the twenty-ninth day of October, the
date of seizure. And we do not think it a fair construc-
tion to be placed upon the language used. On the con-
trary, the language as it stands does not so indicate.
In view of the fact that the attachment suit was not
dismissed until the fourteenth day of February follow-
ing, more than three months thereafter, the most rea-
sonable inference to be placed upon the language is
that the sheriff did not intend to state that he returned
the property to plaintiff herein on the date of its
seizure.

If the return made by the sheriff is that he turned
the property over to plaintiff on the day of its seizure
as claimed by defendants, the remedy of plaintiff would
be on his official bond as sheriff. The law is that the
return of the sheriff is conclusive as to the parties to
that suit. In Smoot v. Judd, 184 Mo. 508, the court
reviews the prior decisions of the State upon the ques-
tion and holds, in speaking of the service of a summons.
"The return of the sheriff showing service of summons
on the defendant in the manner prescribed by the stat-
ute, although false, is conclusive upon the parties to the
suit, and is not subject to attack in the case in which it
is made either before or after judgment." And the court
went further and said that such a return could not be
even overthrown in an equitable proceeding except
where the plaintiff in the judgment "aided or abetted
the false return, and not even then if the property as
a result of a sale under such judgment has passed into
the hands of innocent purchasers." But as we have al-
ready pointed out that the return of the sheriff does
not state the date when he surrendered possession of
the attached property to plaintiff, the evidence in ques-
tion was admissible to show the actual day when the

surrender was made.  The question in that respect does
not fall within the rule of the case cited.  As a matter
of fact, the plaintiffs in error claim that the return of
the sheriff is void.  If this be true, the evidence in ques-
tion was not susceptible to the charge that it contra-
dicted the return of the officer, there being no valid
return.

The return does not state that the property seized
was that of the defendant in the attachment proceed-
ings.  In Anderson v. Scott, 2 Mo. 15, it was held that
the sheriff's return that he levied the attachment on
some mules without saying whose mules they were was
not a good levy.  The plaintiffs in error first deny that
it was competent to introduce evidence impeaching the
return of the sheriff and next that the return itself is
void.  The two positions are conflicting and inconsistent
and for that reason, if for no other, neither ought to be
sustained.  The return does not state whose property
was seized under the writ, and does state that it was
surrendered to the defendants in that suit, the plaintiff
here.  Admitting for the sake of the argument that
defendants herein are right in their contention, then
they are in no condition to complain because of the
admission of said evidence as to the length of time the
property of plaintiff was in the hands of the officer, and
the admission of the sheriff's return also as evidence
for the reason that "In an action on an attachment
bond the obligors are not permitted to question the suf-
ficiency of the sheriff's return of levy or legality of the
attachment writ, for if the writ has been actually levied,
the party causing its issuance is not permitted to show
that the process which he had sued out and 'set agoing'
was not executed according to law."  [State ex rel. v.
Goodhue, 74 Mo. App. 162.]  In State ex rel. v. Stark,
75 Mo. 566, which was where an attachment had been
sued out in a suit brought under what was known as

125 App—23

the Texas Cattle Act to recover damages under its provisions, and which act was declared unconstitutional by the Supreme Court of the United States, the court held that the obligors in an attachment bond could not plead the invalidity of the act to avoid liability on the bond. The authorities cited preclude the defendants from interposing the plea that the return of the sheriff was invalid as a defense to plaintiff's claim for damages.

It is further insisted that the petition does not state a cause of action. The specific criticism is, that it does not state that the attachment was levied on the property of plaintiff, as the allegation as to that matter is that the property was by the sheriff "levied upon and seized as the property of the relator," etc. It is true that the allegation is not a direct statement that the property was that of the plaintiff, but it was perhaps inferentially an allegation of ownership. Defendants did not object to the petition, however, as insufficient by the ordinary methods of demurrer or motion to test its sufficiency, but contented themselves with an allegation in their answer that the petition did not state a cause of action. The court could not pass upon the question presented in that way; but it was used in the motion in arrest of judgment. We think that after judgment the objection came too late as the petition, though defective, was sufficient to support such judgment.

The manner in which the jury arrived at their verdict is questioned also. It is agreed that a slip of paper was found among the ballots of the jury immediately after the jury reported a verdict, on which paper twelve sums were set down, aggregating the figures 11,898, which if divided by twelve, the number of jurors, shows a quotient of 991½. The verdict was $991.50. It is insisted that it is thus shown that each juror put down in figures the amount in his judgment plaintiff was entitled to recover and that it was agreed by the entire jury that the sum of all the figures so made should be

divided by twelve and the result accepted as their verdict. The defendants contend that it is thus shown prima facie "that the verdict was arrived at, not by the deliberate exercise of the judgment and intelligence of the jury, but by a system of chance that did not express the judgment of any one of the jurors;" and that it was the duty of plaintiff to overcome this prima facie case by calling for the evidence of the jurors themselves; and that, plaintiff having failed to do so, the verdict should be set aside.

By reference to Vol. 22, Ency. Pleading and Practice, p. 856, it will be found that the question raised has been before the appellate courts of many of the States, and that "quotient verdicts," as they are termed, are as a rule condemned. But while such is the case, the courts have been very careful in the application of the general rule to specific instances, and where it does not appear that there was a previous agreement to abide by the result to be reached the verdict has not been set aside. In a case where it was agreed to divide the aggregate amounts by twelve and it was understood that the jury were not bound by the result, and that after the amount was so ascertained the jurors unanimously agreed to adopt it as the sum to be returned, the verdict was upheld. [Hunt v. Elliott, 77 Cal. 588.] In Knight v. Fisher, 15 Colo. 176, there was "an agreement in advance by the jurors to arrive at a verdict by each juror marking the amount on paper he is willing to allow, and by adding the said several amounts together and dividing the same by twelve and that the quotient or result shall be the verdict is manifestly wrong." In a case where the jurors could not arrive at a verdict, "they prepared twenty-four slips of paper and wrote plaintiff on twelve of them and defendant on the other twelve and put them all in a hat; one of their number was then blindfolded, and drew from the hat twelve of the papers, upon seven of which there was

the word plaintiff and on five was the word defendant. Thereupon the jury wrote out and returned a verdict for the plaintiff." All of the jurors except two agreed in advance to be bound by the result of such drawing and it was at once accepted by all. The verdict was set aside. [Merseve v. Shine, 37 Iowa 253.]

In Missouri, it was held proper to instruct the jury that it was illegal for them to arrive at a verdict by first agreeing that each juror should set down the amount, if any, which he was in favor of awarding the plaintiff, divide the aggregate by twelve, and that the result thus obtained should be their verdict. And that: "A verdict made by virtue of and pursuant to such an agreement on the part of the jury ought not to stand." [Sharp v. Railroad, 114 Mo. 94.] In McMurdock v. Kimberlin, 23 Mo. App. 523, it was held: "In a case of unliquidated damages the jury may well adopt the average judgment of them all as the individual verdict of each. Not that they can agree beforehand, without a knowledge of what the result will be, that such result, to be obtained by the average process shall irrevocably be their verdict; this would be in the nature of a chance verdict, and would not have received the individual sanction of each member of the panel." This rule was approved and applied in Railroad v. Kansas City, 29 Mo. App. 89.

From the foregoing cases and numerous others that we have examined, the almost unvarying rule is, that a verdict based upon the average judgment of all the jurors is not illegal where it does not appear that there was an agreement beforehand to abide by the result so obtained. And we may add that, where it does not appear affirmatively that such a prearrangement has been entered into by the jurors, the presumption of law is that it has not been made, such a presumption as a rule existing in all instances in favor of right acting.

Applying the rule to the case at bar, we must decide

the question against defendants. It is true the finding of the slip of paper mentioned does strongly indicate that the jury resorted to the average system to ascertain the individual judgment of each juror on the quantum of plaintiff's damages; yet there is nothing to show that there was any agreement beforehand to abide by the result so obtained, and in the absence of such a showing we are bound to presume that there was no such agreement.

For the reasons given, the cause is affirmed. All concur.