MICHAEL McNAMEE v. WOODBURY CONGREGATION OF
JEHOVAH'S WITNESSES ET AL.
(11587)

PETERS, HEALEY, SHEA, GRILLO and BIELUCH, Js.

Argued February 8—decision released April 24, 1984

*Jeremiah M. Keefe* and *James E. Kernan,* for the appellant (named defendant).

*Snow Gene Munford,* for the appellee (plaintiff).

GRILLO, J. In this action for personal injuries, a jury returned a verdict for the defendants.[1] Thereafter, the plaintiff moved to set aside the verdict, alleging that it was contrary to law and against the evidence. The claims asserted in support of the motion were: (1) that the jury erroneously relied on a quotient verdict to apply the court's instructions on comparative negligence; (2) that the court erred in refusing to charge that a traveler upon a highway is entitled to assume that it is reasonably safe for public travel; and (3) that the court erred in refusing to give a charge relative to supervening negligence.[2] The second and third claims were based on the plaintiff's requests to charge which the court refused. The first claim was made in argument on the motion to set aside the verdict and was supported by testimony of the jurors.

The trial court, in sustaining the motion to set aside the verdict, concluded: "Having heard the testimony, the court finds that the jurors aggregated the percent-

---

[1] This action involved comparative negligence. The verdict form returned did not allocate percentages of negligence. Rather, it stated that the jury "finds the issues for the defendants Woodbury Congregation of Jehovah's Witnesses, Inc. and William McBain."

[2] The trial court's memorandum of decision mistakenly states that the plaintiff requested a charge that the defendants were guilty of supervening negligence. The plaintiff actually requested that the court charge regarding supervening negligence.

ages of negligence which each attributed to the plaintiff and averaged the result to arrive at a percentage of negligence to be used in the comparative negligence formula. In addition, it finds that the jurors agreed beforehand that they would accept the average as the percentage of negligence to be attributed to the plaintiff." A new trial was ordered. The named defendant appeals from the decision of the trial court setting aside the verdict. Its appeal attacks the procedure followed by the court—hearing testimony from the jurors—and the court's conclusion that the jury's method of deliberation was illegal. It asserts that the mere fact that the jurors "may have averaged percentages of contributory [sic] negligence" does not establish a quotient verdict.[3] Rather it argues that a quotient verdict is proven when, prior to averaging, jurors agree to be bound by the results of the averaging, and that the *actual* verdict rendered was a result of their agreement and the averaging process.

A "quotient verdict" is defined as follows: "When members of a jury agree (1) that each juror will specify the figure which he recommends and that all the figures will be added together and the sum divided by the number of jurors, and (2) that all the jurors will be bound by, and accept as their verdict, the quotient thereby obtained; a verdict reached in pursuance of such an agreement is a quotient verdict." Annot., 8 A.L.R.3d 339. As a general rule, quotient verdicts are invalid. The foremost objection is that a verdict is supposed to be based, not upon chance, but upon discussion, deliberation, reasoning and collective judgment. Annot., 8 A.L.R.3d 347; 76 Am. Jur. 2d, Trial § 1219; see *Ledbetter* v. *State,* 17 Ala. App. 417, 85 So. 581 (1920); *Burke* v. *Magee,* 27 Neb. 156, 42 N.W. 890 (1889).

---

[3] The legality of a quotient verdict may arise, as here, in connection with the issue of liability, as well as damages, i.e., comparative negligence where the percentage of each party's negligence was involved. See *Schiro* v. *Oriental Realty Co.,* 7 Wis. 2d 556, 97 N.W.2d 385 (1959).

"Although a quotient verdict is generally acknowledged to be invalid, there is substantial authority in support of a rule which renders unavailable the most significant—and often the only—source of evidence whereby the use of a quotient verdict might be proved. This rule, based on the principle that jurors cannot impeach their own verdicts, denies the admissibility of jurors' statements—in affidavits or in oral testimony—offered for the purpose of invalidating a verdict on the ground that it is a quotient verdict." Annot., 8 A.L.R.3d 372.

Courts in several states, however, have not only condemned the jury's arrival at a quotient verdict, but also have sanctioned the use of affidavits or allowed jurors to testify for the purpose of showing that a quotient verdict had been rendered. See *Darland* v. *Wade,* 48 Iowa 547 (1878); *Hukle* v. *Kimble,* 172 Kan. 630, 243 P.2d 225 (1952); *East Tennessee & W.N.C.R. Co.* v. *Winters,* 85 Tenn. 240, 1 S.W. 790 (1886). The rationale of these cases, one may infer, is enunciated in *Wright* v. *The Illinois & Mississippi Telegraph Co.,* 20 Iowa 195 (1866): "[P]ublic policy protects a juror in the legitimate discharge of his duty, and sanctifies the result attained thereby; but if he steps aside from his duty, and does an unlawful act, he is a competent witness to prove such fact, and thereby prevent the sanction of the law from attaching to that which would otherwise be colorably lawful." Id., 212. The Connecticut judiciary very early adopted such a procedure in *Warner* v. *Robinson,* 1 Root 194, 195 (1790).

In the *Warner* case, the court found the facts constituting a quotient verdict by inquiry of the jurors and, concluding that "in trials nothing is to be left to hazard or chance," granted the motion in arrest of verdict. Id. In a later case, the court, speaking through *Park, C. J.,* strongly condemned the quotient verdict: "This mode of arriving at a verdict is reprehensible,

to say the least, for it is hardly possible that an honest result could thus be obtained." *Haight* v. *Hoyt,* 50 Conn. 583, 585 (1883).

In later years, we deviated from our previous policy of allowing questioning of jurors to determine whether a verdict had been reached by lot, maintaining "that the testimony of a juror cannot be received for the purpose of setting aside a verdict, on the ground of mistake or misconduct, on the part of jurors." *Valentine* v. *Pollak,* 95 Conn. 556, 558–59 (1920), quoting *Haight* v. *Turner,* 21 Conn. 593, 596 (1852). However, in *Aillon* v. *State,* 168 Conn. 541, 363 A.2d 49 (1975), we held that the rule of *Valentine* did not entirely prohibit juror testimony extraneous to the mental operations of the jury, citing with approval the opinion expressed in *Wright* v. *The Illinois & Mississippi Telegraph Co.,* supra, 210: "[A]ffidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner." *Aillon* v. *State,* supra, 551; see also *Josephson* v. *Meyers,* 180 Conn. 302, 310–11, 429 A.2d 877 (1980).

The court in the present case found that there had been an agreement to average the percentage of the negligence of the plaintiff and that the averaging process was in fact conducted. The trial court had before it sufficient evidence to sustain those findings. However, the third prong of the quotient test must be satisfied in order to invalidate a verdict: that is, that the *actual* verdict as reported by the jury was solely the result of the agreement and averaging procedure.

A jury verdict cannot be set aside as a quotient verdict unless it is shown that the jury adhered to its agreement to abide by an averaging process and that its verdict was therefore reached as a result of the averaging agreement. *Barton* v. *State,* 34 Tex. Crim. 613, 31 S.W. 671 (1895). "A mere showing that the members of the jury agreed to be bound by the results of the quotient process will not warrant the setting aside of a verdict as a quotient verdict if the jurors' agreement has actually not been carried out." Annot., 8 A.L.R.3d 353. Thus, even after arriving at the average in accordance with an agreement, where the jury discussed the matter of adding the funeral expenses, that amounted to an amendment to the average by the jury. This procedure (adding to the average sum, as well as deducting therefrom) was held to present positive deliberation and consideration of the verdict and "took it out from under the objection as being a 'quotient' verdict." *Gylling* v. *Hinds,* 122 Colo. 345, 351, 222 P.2d 413 (1950).

Our review of the memorandum of decision of the trial court indicates that no finding relative to the existence of the third requirement of a quotient verdict was made. In closing, the memorandum states: "In this case, we know that the case was decided on comparative negligence because the jury sent out a note stating they had found contributory negligence in excess of 50% (Court's Exhibit 2)." This observation in itself cannot be construed unequivocally to constitute a finding that the verdict rendered corresponded to that required by the third element of proof so as to render invalid a verdict reached by the averaging process. Therefore, the case must be remanded to the trial court for an appropriate articulation of the issue.

In addition to his claim with regard to the alleged quotient verdict, the plaintiff in his motion to set aside the verdict alleged error in the failure of the trial court

to charge on supervening negligence. This supplemental issue was not addressed by the trial court. It has, however, been pursued in this court by briefs and argument. We, therefore, entertain the question since the court may properly set aside a verdict when it has, in its charge, made a harmful error. *Libero* v. *Lumbermens Mutual Casualty Co.*, 143 Conn. 269, 273, 121 A.2d 622 (1956).

The defendant denies that the plaintiff was entitled to a charge on supervening negligence and maintains that supervening negligence and last clear chance are equivalent legal doctrines. Hence, since the statute establishing comparative negligence abolished the doctrine of last clear chance,[4] supervening negligence cannot be charged by the court. We agree.

In *Correnti* v. *Catino*, 115 Conn. 213, 215, 160 A. 892 (1932), the principal error claimed was the "failure of the trial court upon the request of the plaintiff to instruct the jury upon the *doctrine* of supervening negligence or the last clear chance." (Emphasis added.) The court in *Correnti* referred to "supervening negligence" and "last clear chance" as alternate terms or expressions of the same legal doctrine. It repeatedly spoke of them as being a single principle of law having the same legal meaning and effect.[5] For cases in which the

---

[4] General Statutes § 52-572h (c) states: "The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished."

[5] In Connecticut there are four essential parts to the doctrine: (a) The injured person must have negligently placed himself in a position of peril, sometimes called the "zone of danger." In other words, the basis of the doctrine is that the plaintiff himself is negligent. (b) The injuring party either becomes aware of the plaintiff's plight, or in the exercise of due care should become aware of his plight. (c) The injuring party subsequently has an opportunity by the exercise of reasonable care to save the other from harm. (d) The injuring party fails to exercise such care. Wright & Fitzgerald, Conn. Law of Torts (2d Ed.) § 45. Parenthetically, it is noted that both the Connecticut Digest (Phillips, Negligence, Vol. 2, § 17) and the Digest of Decisions (Dowling, Negligence, Vol. 7, § 21) list together those cases dealing with supervening negligence and last clear chance.

necessary conditions of the doctrine were discussed, the court cited the following cases involving intervening negligence, supervening negligence, and last clear chance: *Omiccioli* v. *Connecticut Co.*, 96 Conn. 716, 115 A. 475 (1921); *Zenuk* v. *Johnson*, 114 Conn. 383, 158 A. 910 (1932); *Waselik* v. *Ferrie Construction Co.*, 114 Conn. 85, 157 A. 642 (1931); *Correnti* v. *Catino*, supra, 222.

In *Bottaro* v. *Schoenborn*, 157 Conn. 194, 195, 251 A.2d 79 (1968), this court, stating that the trial court instructed the jury properly concerning the rule of supervening negligence, referred to the four conditions that were required, citing *Intelisano* v. *Greenwell*, 155 Conn. 436, 232 A.2d 490 (1967), and *Annes* v. *Connecticut Co.*, 107 Conn. 126, 139 A. 511 (1927). The court in *Intelisano*, supra, 444, set forth the elements applicable to last clear chance doctrine, while the court in *Annes*, considering a cause of action based on supervening negligence, cited the same four elements. Thus, we see that the same four principles constitute what is alternatively called the doctrine of supervening negligence or the last clear chance doctrine. While the terminology is different, the meaning is synonymous. "[T]here are as many variant forms and applications of this doctrine [last clear chance] as there are jurisdictions which apply it." Prosser, Torts (4th Ed.) § 66, p. 429.

The plaintiff also assigns as error the refusal of the court to charge that a traveler on a highway is entitled to assume that it is reasonably safe for public travel. The propriety of this request must be considered vis-a-vis the evidence at trial concerning the occurrences that factually preceded the plaintiff's injury.

The defendant church owned a tract of wooded land in Woodbury. On March 21, 1977, the members of the

church, with the help of the plaintiff, began cutting trees on the property, which abutted a public highway, Weekeepeemee Road. A chain saw used by the defendant William McBain was stuck in a tree. McBain requested assistance from the plaintiff who, in order to reach "McBain's tree," walked a distance of seventy-five feet down Weekeepeemee Road, and then a distance of about twelve feet from the road to the tree. The plaintiff assisted McBain by cutting a wedge in the tree to release McBain's chain saw. He then walked back to the road and headed in the direction of his parked car. After McBain resumed cutting the tree, it fell and struck the plaintiff before he reached his car.

The defendant concedes the general rule that persons using a public highway which is in constant use, and when their attention has not been called to any obstructions or perils thereon, have a right to assume that the way is reasonably safe for ordinary travel. See *Tully* v. *Demir*, 131 Conn. 330, 333, 39 A.2d 877 (1944); *Corcoran* v. *New Haven*, 108 Conn. 63, 67, 142 A. 569 (1928). It maintains, however, that the doctrine does not apply when the plaintiff is aware, or should reasonably have been aware, of conditions in question. We agree with this contention and conclude that the requested instruction was inappropriate because of the undisputed evidence that the plaintiff was fully aware of the potential danger.

While we find no error on the record as to the action of the court relative to the plaintiff's requests to charge or the findings regarding the quotient verdict, the case is remanded for further articulation by the court on the issue of whether the actual verdict was solely the result of a prior agreement to employ the averaging procedure.

For the reasons set forth above, we remand this case to the trial court with direction for further articulation.

In this opinion PETERS, SHEA and BIELUCH, Js., concurred.

ARTHUR H. HEALEY, J. (concurring). I concur in the result because I agree, as does the majority, that it is well settled that quotient verdicts are invalid and I also agree that the directed articulation should be made.[1] Justice Holmes once said: "[T]he jury has the power to bring in a verdict in the teeth of both [the] law and [the] facts." *Horning* v. *District of Columbia,* 254 U.S. 135, 138, 41 S. Ct. 53, 65 L. Ed. 185 (1920). This is not so where the verdict is a quotient verdict.

I write separately because it should be made clear that the inquiry to ferret out the existence of a quotient verdict almost invariably requires probing matters that inhere in the verdict. The issue upon which this case is being returned for articulation, i.e., whether the agreement to be bound by the quotient on comparative negligence persisted through to the actual rendition of the verdict, unquestionably inheres in the verdict. See *Josephson* v. *Meyers,* 180 Conn. 302, 311, 429 A.2d 877 (1980); *Aillon* v. *State,* 168 Conn. 541, 550, 363 A.2d 49 (1975). The very word "agreement" is by definition or any objective view a mental process, a oneness of opinion. Webster, Third New International Dictionary. Even after *Aillon* v. *State,* supra, we said juror evidence proferred to impeach a verdict is inadmissible where "it clearly implicates the mental processes of that juror." *Josephson* v. *Meyers,* supra, 311–12. What was elicited from the jurors questioned inhered in the verdict and was not "extraneous to the mental operations of the jury." *Aillon* v. *State,* supra, 550. It is true this court has said that "the trial court may question jurors to determine whether an incident of potential misconduct occurred." *Josephson* v. *Meyers,* supra, 310. We have indicated that juror inquiry may

---

[1] I agree with the resolution of the claims directed to the jury instructions of the trial court.

be made, inter alia, on a claim "that the verdict was determined by aggregation and average or by lot . . . ." *Josephson* v. *Meyers, supra.* Yet we still talk in terms of prohibiting juror evidence where any matter offered "essentially inhere[s]" in the verdict. *Josephson* v. *Meyers, supra.* If the "agreement" to be bound by the quotient result on the comparative negligence issues which apparently decided this case is not a mental operation that inhered in the verdict, it would be heaping Pelion on Ossa to find something that inhered any less in their verdict. We are carving out an exception to the rule prohibiting inquiry of jurors concerning matters that inhere in their verdict so I am persuaded we should say just that here, especially because we are doing it to ferret out quotient verdicts. "A quotient verdict is . . . prejudicial because it violates the fundamental precept of proper jury conduct which dictates careful deliberation and a verdict based on the evidence." *Johnson* v. *Haupt,* 5 Kan. App. 2d 682, 687, 623 P.2d 537 (1981) (quotient verdict on issue of comparative negligence).

There can be little doubt that the quotient process has found utility in jury deliberating rooms; the majority implicitly recognizes that. "Using a quotient as a point for discussion is not improper." *Womble* v. *J. C. Penney Co.,* 47 F.R.D. 350, 355 (E.D. Tenn. 1969). It has been held proper for jurors to use the quotient process experimentally or as a means of arriving at a "ballpark figure" of damages, so long as they do not agree to be bound by that figure even though after further discussion they do agree to the figure so arrived at as a just and reasonable measure of damages. *Kimball* v. *Walden,* 301 S.E.2d 210, 213 (W. Va. 1983), and cases there cited. "[A] jury's use of a quotient merely as the basis for further deliberation does not vitiate the verdict." *Maher* v. *Isthmian Steamship Co.,* 253 F.2d 414, 419 (2d Cir. 1958). Common sense recognizes that

to expect each juror on a civil case to produce an identical monetary evaluation of a matter of unliquidated damages is "totally unrealistic." See *Klein* v. *Eichen,* 63 Misc. 2d 590, 594, 310 N.Y.S.2d 611 (1970). The same can fairly be said of six civil jurors coming up with identical percentages in a comparative negligence case. That, of course, does not validate any proscribed quotient verdict.

In making this exception to the "inhering in the verdict" rule, the gravity of setting a civil jury verdict aside on quotient verdict grounds generates important considerations. The stability of jury verdicts is and has been of concrete substance to our justice system and, in turn, to the role that system occupies in our society. Thus, courts have held that there is a presumption of regularity in civil proceedings including jury deliberations. See *State ex rel. Senter* v. *Cowell,* 125 Mo. App. 348, 355, 102 S.W. 573 (1907); *Klein* v. *Eichen,* supra, 593; *Kimball* v. *Walden,* supra. One court puts it this way: "As a general rule, a strong presumption of regularity attaches to every step of a civil proceeding, including jury deliberations, and the burden is on the party seeking a new trial to show affirmatively that irregularity exists." *Kimball* v. *Walden,* supra, 214. With reference to quotient verdicts, it has been pointed out that "[t]he legal presumption is that no such arrangement was made." *Klein* v. *Eichen,* supra, 593. See also *Farmer & Co.* v. *Hooks,* 239 F.2d 547 (10th Cir. 1956), cert. denied, 353 U.S. 911, 77 S. Ct. 669, 1 L. Ed. 2d 665 (1957); *Board of Commissioners of Dona Ana County* v. *Gardner,* 57 N.M. 478, 260 P.2d 682 (1953); *Manshul Construction Corporation* v. *Dormitory Authority,* 111 Misc. 2d 209, 215, 444 N.Y.S.2d 792 (1981). There must be "strong evidence" for setting aside a verdict as a quotient verdict. *Boquist* v. *Montgomery Ward & Co.,* 516 S.W.2d 769, 777–78 (Mo. App. 1974).

Such pronouncements, together with the cracking of the jury room door that apparently exists in these quotient verdict cases, suggests to me that, in the future, the standard of proof on the party claiming such illegality of the verdict be higher than that of a fair preponderance of the evidence. "[W]e must be mindful that the function of legal process is to minimize the risk of erroneous decisions." *Addington* v. *Texas,* 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); see *Mathews* v. *Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Adopting a "standard of proof is more than an empty semantic exercise." *Tippett* v. *Maryland,* 436 F.2d 1153, 1166 (4th Cir. 1971), cert. dismissed sub nom. *Murel* v. *Baltimore City Criminal Court,* 407 U.S. 355, 92 S. Ct. 2091, 32 L. Ed. 2d 791 (1972). Its function brings home to the factfinder "the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship,* 397 U.S. 358, 370, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (Harlan, J., concurring). "The standard [of proof] serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington* v. *Texas,* supra, 423. The burden is on the moving party in a civil proceeding to establish juror misconduct. See generally *Williams* v. *Salamone,* 192 Conn. 116, 119, 470 A.2d 694 (1984). The party claiming that a verdict is invalid as a quotient verdict and who should prevail if that is established must, in my view, do so by the standard of clear and convincing evidence as we have employed that term. See, e.g., *LoPinto* v. *Haines,* 185 Conn. 527, 534, 441 A.2d 151 (1981); *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 536, 368 A.2d 125 (1976).

Courts have recognized that "quotienting" has been used by civil jurors; it is only when the malignant "quotienting" destroys the verdict that courts strike down

that verdict. I believe that to establish such a verdict courts must, as in this case, inquire in matters that "inhere" in the verdict. A party moving to void a verdict on that ground should therefore be held to a higher standard of proof. The preservation of the integrity of civil jury verdicts, in the face of an attack that the jurors' "agreement" is invalid, requires this higher standard. More significantly, such a standard would underscore the degree of confidence which society thinks that the trial court, as the factfinder, should be held to on the correctness of the factual conclusions in this critical post-verdict determination. See *Addington* v. *Texas,* supra, 423.